# In the United States Court of Federal Claims
OFFICE OF SPECIAL MASTERS
No. 15-1526V
Filed: January 31, 2023

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| ABIGAIL and DANIEL SIMS | * | |
| *on behalf of A.E.S.*, | * | Not For Publication |
| | * | |
| Petitioner, | * | |
| v. | * | Interim Attorneys' Fees and Costs; |
| | * | Respondent Does Not Object; |
| SECRETARY OF HEALTH | * | Protracted Litigation. |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Michael McLaren*, Black McLaren, et al., P.C., Memphis, TN, for petitioner.
*Voris Johnson*, United States Department of Justice, Washington, DC, for respondent.

## DECISION ON INTERIM ATTORNEY'S FEES AND COSTS[1]

**Roth,** Special Master:

On December 15, 2015, Abigail and Daniel Sims ("petitioners"), acting on behalf of their deceased daughter A.E.S., filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"). Petitioners allege that A.E.S. died on December 16, 2013, as a result of the Pediarix (DTaP/IPV/HepB), Hib, PCV13, and RotaTeq vaccinations she received on that date. Petition, ECF No. 1. Petitioners filed their first Motion for Interim Attorney's Fees and Costs ("Motion for Fees") on June 16, 2017. ECF No. 31. A decision was issued on June 14, 2018, granting their first Motion for Fees. ECF No. 42.

On August 23, 2022, petitioners filed a second Motion for Fees pursuant to Section 15(e) of the Vaccine Act. Second Motion for Fees, ECF No. 91. After careful consideration, the undersigned has determined to **grant in part** the request for the reasons set forth below.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to delete medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Procedural History

The petition was filed on December 15, 2015. ECF No. 1. Supporting medical records were filed on February 24, 2016 and a statement of completion was filed the following week. ECF Nos. 9-10.

On April 14, 2016, respondent filed a status report advising that he intended to defend this matter. ECF No. 13. The Rule 4(c) Report was filed on May 12, 2016. ECF No. 14.

On February 14, 2017, petitioner filed an expert report from Dr. Robert Shuman and additional medical records. ECF No. 23. Petitioner subsequently filed additional medical records and a compact disc containing supporting medical literature. ECF Nos. 26-28.

Petitioner filed her first Motion for Fees on June 16, 2017, and respondent filed a response on July 5, 2017. ECF Nos. 31-32.

On August 24, 2017, respondent filed expert reports from Dr. Christine McCusker and Dr. Brent Harris, as well as supporting medical literature. ECF Nos. 35-38. On November 20, 2017, respondent filed a status report advising that he intended to continue defending this case. ECF No. 40.

On June 14, 2018, a decision issued granting petitioners' first Motion for Fees and Costs in full. ECF No. 42. Petitioners filed additional expert reports from Dr. Shuman and Dr. Eric Gershwin the following day, as well as supporting medical literature. ECF Nos. 43-46. Respondent filed additional medical literature and a responsive expert report from Dr. McCusker on September 24, 2018. ECF No. 50. Petitioners filed a supplemental expert report from Dr. Gershwin on December 7, 2018. ECF No. 52.

An entitlement hearing was scheduled for December 17, 2020.[3] ECF No. 55. Petitioners filed additional medical literature, an amended petition, and their pre-hearing submission on October 22, 2020. ECF Nos. 58-60. Respondent filed his pre-hearing submission on November 12, 2020. ECF No. 61. Petitioners filed another pre-hearing submission, additional medical literature, demonstrative aids, and a photograph on the same date. ECF Nos. 62-66. Petitioners and respondent filed additional pre-hearing submissions on November 19, 2020; November 30, 2020; December 3, 2020. ECF Nos. 69-70, 74-75.

Following the hearing, the parties filed additional medical literature and expert reports. ECF Nos. 86-87. Petitioners and respondent both filed post-hearing briefs on May 3, 2021. ECF Nos. 89-90.

On August 23, 2022, petitioners filed their second Motion for Attorneys' Fees and costs, requesting a total of **$462,481.91**, representing **$149,769.90** in fees and **$312,712.01** in costs. Second Motion for Fees, ECF No. 91. Respondent filed a Response the next day, deferring to the

---

[3] Due to the COVID-19 pandemic, the entitlement hearing was later scheduled to take place virtually. ECF No. 68.

undersigned to determine whether the statutory requirements for an award of interim fees and costs were met. Response, ECF No. 92. Petitioner did not file a Reply.

This matter is now ripe for decision.

## II. Legal Framework

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, he or she is entitled to an award of reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id.* The lodestar method is also used to calculate a reasonable expert fee. *Simon v. Sec'y of Health & Human Servs.*, No. 05-941V, 2008 WL 623833, at *1 (Fed. Cl. Spec. Mstr. Feb. 21, 2008).

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

## III. Discussion

**A.     Availability of Interim Fees**

Special masters have discretion to award interim fees while the litigation is ongoing if "the cost of litigation has imposed an undue hardship" and there is "a good faith basis for the claim." *Shaw v. Sec'y of Health & Human Servs.*, 609 F. 3d 1372, 1375 (Fed. Cir. 2010); *see Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). The court in *Avera* held that interim fees may be awarded "in appropriate circumstances." *Id.* at 1351. The court then listed some circumstances—cases involving "protracted" proceedings and "costly experts"—in which it would be "particularly appropriate" to award interim fees. *Id.* at 1352. But "the Federal Circuit in *Avera* . . . did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees," *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), and "special masters [retain] broad discretion in determining whether to award" them, *Al-Uffi ex rel. R.B. v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5 (Fed.

3

Cl. Spec. Mstr. Sept. 30, 2015). In making this determination, "the special master may consider any of the unique facts of a case." *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 94 (2016).

Under the circumstances of this case, interim fees are warranted. While petitioners have already been awarded fees and costs once, that was over four years ago. Since that time, petitioners have participated in a hearing and incurred significant costs for their experts. *See generally* Second Motion for Fees. This ordinarily "suffice[s] to constitute the type of 'circumstances' to warrant an interim fee award." *Woods*, 105 Fed. Cl. at 154; *see also, e.g., Thompson v. Sec'y of Health & Human Servs.*, No. 12-475V, 2018 WL 1559799, at *1 (Fed. Cl. Spec. Mstr. Feb. 28, 2018) ("[I]nterim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship on petitioner"); *Kottenstette v. Sec'y of Health & Human Servs.*, No. 15-1016V, 2017 WL 5662780, at *3 (Fed. Cl. Spec. Mstr. Oct. 30, 2017) (finding two-year proceeding constituted appropriate circumstances for interim fees).

Petitioners have expended significant time and costs in litigating this matter thus far. A decision in this case, though forthcoming, requires additional time, given the current case load. A conclusion in this matter is therefore not imminent. Further, since respondent raised no objections to petitioner's application but deferred to the special master to determine whether the statutory requirements for interim fees had been met, his lack of any specific objection is taken into consideration. Response at 2, ECF No. 92. In sum, the circumstances of this case warrant an award of interim fees and costs, so as not to impose economic hardship on petitioners.

**B.      Reasonable Hourly Rates**

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec.

Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Attorneys at the Black McLaren firm have been recognized to practice in forum, entitling them to commensurate rates established in *McCulloch*. *See Knorr v. Sec'y of Health & Human Servs.*, No. 15–1169V, 2017 WL 2461375, at *3 (Fed. Cl. Spec. Mstr. Apr. 17, 2017); *Henry v. Sec'y of Health & Human Servs.*, No. 15–545V, 2016 WL 7189925, at *10 (Fed. Cl. Spec. Mstr. Nov. 4, 2016). Petitioners requested fees in various rates of compensation for Michael McLaren, William Cochran, law clerks, and paralegals at the firm. The rates requested are as follows:

| Name | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|
| MGM[5] | $440 | $456 | $464 | $484 | $484 | $501 |
| WEC[6] | $365 | $377 | $391 | $405 | $420 | $435 |
| Law Clerks | $148 | $153 | $156 | $156 | $156 | n/a |
| Paralegals | $145 | $150 | $155 | $160 | $161 | $167 |

*See* Second Motion for Fees at 8.

The requested rates have been awarded by other Special Masters in previous decisions. *See Pingel v. Sec'y of Health & Human Servs.*, No. 17-70V, 2022 WL 2441329, at *2 (Fed. Cl. Spec. Mstr. June 8, 2022) (awarding the requested rates in full for 2019-2022); *Reichert v. Sec'y of Health & Human Servs.*, No. 16-697V, 2018 WL 3989429, at *2 (Fed. Cl. Spec. Mstr. June 20, 2018) (awarding the requested rates in full for 2017-2018); *Akers v. Sec'y of Health & Human Servs.*, No. 15-597V, 2022 WL 1863931, at *2 (Fed. Cl. Spec. Mstr. May 6, 2022) (awarding the requested rates or higher for 2018-2021); *Thompson v. Sec'y of Health & Human Servs.*, No. 18-1217V, 2022 WL 16579474, at *5 (Fed. Cl. Spec. Mstr. Sept. 27, 2022) (awarding MGM's requested rates in full for 2018-2022).

Based on the foregoing, I find the hourly rates billed by petitioners to be reasonable.

**C.      Hours Reasonably Expended**

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be

---

[4] The 2015-2022 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Sers.,* No. 09-923V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).
[5] MGM refers to Michael G. McLaren.
[6] WEC refers to William E. Cochran.

5

comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs*., No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs*., No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases); *see also Knox v. Sec'y of Health & Human Servs*., No. 90–33V, 1991 WL 33242, at *7 (Fed. Cl. Spec. Mstr. Feb. 22, 1991) (finding that "50% of the expert's [travel] time should be compensated"). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs*., 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of the hours billed by the Black McLaren firm, I find that the entries are detailed, and the time spent on each matter reasonably corresponds with the work performed. Additionally, petitioners appropriately requested payment only for hours billed after their first Motion for Fees was filed. *See* Second Motion for Fees at 12. Thus, the hours spent on this matter are reasonable.

### D. Reasonable Costs

#### i. Costs Related to Dr. Shuman

In addition to fees, petitioners requested compensation for costs. Petitioners requested fees for their expert, Dr. Shuman. Dr. Shuman is a well accomplished physician who is Board Certified in Pathology (neuropathology), neuroimaging, psychiatry, and neurology with special competence in child neurology. Pet. Ex. 17 at 2. Dr. Shuman specializes in pediatric neurology and was in private practice at Child Neurology, Inc. from 1991-2006. Dr. Shuman retired from private practice in 2006 and no longer sees patients. He now derives part of his income from litigation consulting and the remainder from investments. Tr. 167-168; *See* Pet. Ex. 16; Pet. Ex. 17. He has previously testified in the Vaccine Court as a pediatric neurologist and been recognized as well qualified in his field of pediatric neurology. *See Loving v. Sec'y of Health & Human Servs*., No. 02–469V, 2008 WL 4692376, at *4 (Fed. Cl. Spec. Mstr. Oct. 6, 2008), *vacated on other grounds*, 86 Fed. Cl. 135 (2009).

Petitioner has requested $274,328.00 for Dr. Shuman, who billed at a rate of $400.00 per hour. Second Motion for Fees at 36, 41-42, 54-57. This is consistent with the rate that Dr. Shuman has been awarded in other rulings. *See Rodela v. Sec'y of Health & Human Servs*., No. 17-236V, 2020 WL 583841, at *3 (Fed. Cl. Spec. Mstr. Jan. 10, 2020). Accordingly, the undersigned finds the billing rate reasonable.

However, the hours billed by Dr. Shuman in this case are excessive. Notably, Dr. Shuman was previously paid in an interim fee decision issued on June 14, 2018. *See Sims v. Sec'y of Health & Human Servs.*, No. 15-1526V, 2018 WL 3433330, at *4 (Fed. Cl. Spec. Mstr. June 14, 2018). In petitioners' first Motion for Fees, a request for $39,864.00, which included a $5,000.00 retainer, was submitted for Dr. Shuman's work from 10/17/2016 through 2/7/2017. First Motion for Fees at 35. Dr. Shuman billed for approximately 100 hours of work during that timeframe and provided an initial expert report that was 42 pages in length. *See id.* at 50; Pet. Ex. 16. This report was filed on February 14, 2017—four months before the first Motion for Fees was filed. ECF No. 23. The medical literature cited in his report was filed via a compact disc on March 20, 2017. ECF No. 27.

In petitioners' current and second Motion for Fees, petitioners have requested $274,328.00 for Dr. Shuman's work from 2/13/2017 through 2/27/2021. Second Motion for Fees at 36. The current application for fees includes Dr. Shuman's work on a supplemental expert report, which was 6 pages in length, review of medical literature and the reports of other experts in this case, and the time he spent at hearing. *See id.* at 41-42, 54-57; Pet. Ex. 92. Dr. Shuman's supplemental report was filed on June 15, 2018, accompanied by the medical literature cited therein. Pet. Ex. 92-96, ECF No. 46.

Dr. Shuman billed an additional 685.82 hours since petitioners' first application for a total of 785.48 hours or $314,192.00 in total fees. *See* Second Motion for Fees at 41-42, 54-57. In contrast, as set forth more specifically below, petitioner's other expert, Dr. Gershwin, an immunologist, wrote two reports with accompanying literature, reviewed the other experts' reports, testified at the two-day hearing, and billed for 69 hours of time. *Id.* at 36, 38-40, 43, 46-47, 49.

Petitioners conceded that "the number of hours requested by Dr. Shuman at first glance might appear high"; however, they argued that "the number is reasonable when viewed in the overall context of this case." *Id.* at 4. Nevertheless, petitioners acknowledged that "it is the sound discretion of the Court to determine the reasonableness of the hours spent by an expert." *Id.* at 5.

The overall context of this case involves an infant who presented for a two month well baby check-up on December 16, 2013 and received Pediarix (DTaP/IPV/HepB), Hib, PCV13 and Rotateq vaccinations. Petitioners allege that she suffered a Table encephalopathy, leading to her death approximately six hours later. Alternatively, they allege the vaccinations she received caused an off-Table encephalopathy, pulmonary edema, visceral congestion, and death. *See* Petition. The parties disputed the significance of the autopsy findings, specifically the presence of cerebral edema. Joint Submission at 1, ECF No. 75. Succinctly, this case involved the death of a 10-week-old healthy baby following receipt of routine vaccinations either from a Table or off-Table encephalopathy.[7]

---

[7] The Qualifications and Aids to Interpretation define acute encephalopathy for children less than 18 months of age: (1) without a seizure, an acute encephalopathy is indicated by a significantly decreased level of consciousness that lasts at least 24 hours or (2) following a seizure, an acute encephalopathy is demonstrated by a significantly decreased level of consciousness that lasts at least 24 hours and cannot be attributed to a postictal state – from a seizure or a medication. 42 C.F.R. § 100.3(c)(2)(i)(A).

The United States Supreme Court instructed that expert compensation ought not be granted for "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Hence, "The question is not whether [an expert] expended the number of hours claimed but whether it was reasonable and necessary for him to do so." *Wasson v. Sec'y of Health & Human Servs.*, No. 90–208V, 1991 WL 135015, at *3 (Fed. Cl. Spec. Mstr. July 5, 1991), *remanded* 24 Cl. Ct. 482 (1991), *aff'd* 988 F.2d 131 (Fed.Cir.1993) ("The Special Master did not abuse her discretion in substantially reducing compensation for attorney fees using her considerable experience with the Vaccine Act, her knowledge of the issues in this case, and comparison with awards in similar cases."). The petitioner must monitor the expert's overall fees to ensure that the fees remain reasonable. *Perreira v. Sec'y of Health & Human Servs.*, No. 90–847V, 1992 WL 164436, at *4 (Cl. Ct. Spec. Mstr. June 12, 1992), *aff'd* 33 Fed.3d 1375 (Fed. Cir.1994). ("This court has continuously warned counsel of their obligation to monitor expert fees.") (citations omitted).

The billing records submitted with the current application show that Dr. Shuman devoted an extraordinary amount of time to reviewing medical literature. *See* Second Motion for Fees at 41-42, 54-57. For example, Dr. Shuman billed for 11.25 hours for reading Walter, Tokoto, Menkes and "writ[ing], edit[ing], amend[ing], [and] email[ing]"; 10.5 hours reading "Pert Enceph, Cfia vs pVx + role of PT as CMP vs adjuvant in PolyVx; Interactions innate & Humoral; Ferol with Alade & with Martone"; and 14.25 hours for reviewing "Apnea in NN; Zielinski Poland/DPaT/DPwt study; PM file to Eric."[8] *Id.* at 54-55. Interestingly, the billing records show that Dr. Shuman reviewed the vast majority of this literature after his initial lengthy report was submitted to petitioners' counsel and filed with the Court. Thus, he spent hours upon hours reading literature for a six-page supplemental expert report. *See* Pet. Ex. 92. Further, some of the literature he billed for reading was never filed in this case,[9] so its relevancy is unknown.

For the purposes of this Motion, I do not question whether Dr. Shuman spent numerous hours, or as the billing records show days, reading literature; in fact, it is understandable that it would take someone hours if not days to read medical textbooks and literature. But, as stated above, the question is not whether Dr. Shuman actually spent these hours reading the literature; but rather "whether it was reasonable and necessary for him to do so." *Wasson*, No. 90–208V, 1991 WL 135015, at *3. I find that it was not.

---

[8] In addition to these examples, and though not an exhaustive list, Dr. Shuman billed the following: 8 hours for "Add Janeways, send Madge's 10y FU of NCES Population"; 9.75 hours for reading "Pediarix Vx pre-app; FDA pkg insert Pediarix 2002; compare w chronology with Multiples of VxAgs"; 9 hours for reading "Ref on CE; BBB; ILs; Cerebral edema"; 10.5 hours for "Analyze and tree-out refs on Gershwin. Start ReDraft."; 9.5 hours for reading "Anaphylaxis/Oski & Naatl Vx Table 90b"; 8.25 hours for "Rev, Eric G, Martinez Fernandes PMS study/revise chonol"; 14 hours for reading "Dolgopol + CE + PT; Enceph &Cytokines of innate immaturity"; 9.08 hours for "trim/edit/delete pp 1-50"; 14.25 hours for "Parti-Tion into supplements, send"; 16.5 hours for "Bibliog; downloads of pics/affidav ; Kepio/Kinsbourne;Shwartzman"; 10.25 hours for "Send PDT's to WC, revise bib; revise chronol". *See* Second Motion for Fees at 41-42, 54-57.

[9] For example, Dr. Shuman billed 8 hours for reading "Tween in Vx=E Fool; SUID not SIDS, Nat vital stats 2013"; 9 hours for reading "Tween/PS tissue con-Centrations; analyze Tween 1984-1990"; 11.25 hours for reading "Path of anaphylaxis; shock with Leaky caps vs. HIE". Second Motion for Fees at 54-55. It does not appear that any literature with those titles was filed in this matter. *See* Supplemental Table of Contents, ECF 87.

While Dr. Shuman's initial expert report was lengthy at 42 pages,[10] with multiple theories advanced (some novel) only one theory (that A.E.S. suffered encephalopathy following her vaccinations causing her death) was ultimately offered for my consideration. *See* Second Motion for Fees at 5; Petitioner's Post-Hearing Submission at 14 nt. 2. To that end, petitioners argued that Dr. Shuman utilized his expertise to develop several theories and opinions to satisfy petitioners' burden. Second Motion for Fees at 4-5. However, after determining that they would be better served by focusing on only one theory, petitioners' counsel decided to abandon several of Dr. Shuman's theories, including: direct toxic insult from pertussis toxin, polysaccharide conjugates of pneumococcus or Tween80, and maternal transmission of antibody from Tdap vaccine received during pregnancy. *Id*. at 5. Ultimately, Dr. Shuman testified that A.E.S. suffered an encephalopathy, which led to her death, as a result of the subject vaccines.[11] Tr. 140. It is not unusual for an expert to formulate opinions or advance theories that are ultimately not pursued at trial. However, the extremely high number of hours Dr. Shuman spent developing these theories and continued to expend time reading about after his initial report was filed was excessive.

Additionally, Dr. Shuman billed at his regular rate of $400.00 for administrative work and travel, such as downloading pictures and affidavits and for "Org court data, travel to Sac[ramento], find court." *See id*. at 56, 57. There is no support provided that Dr. Shuman worked during his travels to Sacramento to support his full hourly rate for travel time.

While Dr. Shuman's expertise is impressive and his testimony at hearing helpful, billing over 685 hours, in addition to the 100 hours already billed and compensated, in the context of this case was unreasonable and unnecessary. In my experience and research, I was unable to find another instance where an expert billed such a high number of hours in a single case. As such, a reduction in Dr. Shuman's hours is warranted.

Dr. Shuman's hours have previously been deemed excessive and reduced by other Special Masters. *See Loving v. Sec'y of Health & Human Servs*., No. 02–469V, 2015 WL 10579257, at *15 (Fed. Cl. Spec. Mstr. Dec. 15, 2015) (reducing Dr. Shuman's fee by one-third for poor item descriptions, redundant research work, and administrative tasks); *Baker v. Sec'y of Health & Human Servs*., No. 19-1327V, 2022 WL 3715873, at *4 (Fed. Cl. Spec. Mstr. Aug. 4, 2022) (reducing Dr. Shuman's award by 20% for block-billing, vague entries, and excessive billing); *Nuttall v. Sec'y of Health & Human Servs*., No. 07–810V, 2014 WL 643584, at *6-7 (Fed. Cl. Spec. Mstr. Jan. 23, 2014) (reducing Dr. Shuman's hours spent by 5% for "possibly excessive time spent on literature review"); *Sharpe v. Sec'y of Health & Human Servs*., No. 14-065V, 2018 WL 3990867, at *3 (Fed. Cl. Spec. Mstr. July 6, 2018) (reducing Dr. Shuman's fee by $5,750.00 for impermissibly vague entries and block-billing).

Succinctly, the hours spent by Dr. Shuman during the subject time period were excessive and therefore will be reduced by 40%. This results in a **reduction of $109,731.20 from his fee**.

---

[10] Based on the communications contained in the billing, it appears Dr. Shuman's first report was originally longer. *See* Second Motion for Fees at 26.

[11] The proffered theories will be discussed in greater detail in the entitlement decision.

Even with that reduction, Dr. Shuman will be paid $164,596.80 for this current application and have received a total of $204,460.80 to date for this case.[12]

### ii. Costs Related to Dr. Gershwin

Petitioners requested $32,925.00 in costs for their other expert, Dr. Gershwin. Second Motion for Fees at 36, 38-40, 43, 46-47, 49. Dr. Gershwin billed at a rate of $450.00 or $500.00 per hour, depending on if he received payment within sixty days. *Id*. Both rates are consistent with what he has been awarded in prior rulings. *See Wilson v. Sec'y of Health & Human Servs*., No. 15–521V, 2017 WL 1713104, at *1 (Fed. Cl. Spec. Mstr. Mar. 29, 3017); *Rosof v. Sec'y of Health & Human Servs*., No. 14–766V, 2017 WL 1649802, at *4 (Fed. Cl. Spec. Mstr. Mar. 31, 2017). Thus, I find both rates to be reasonable. Dr. Gershwin submitted two expert reports in this matter and billed for 69 hours. *See* Pet. Ex. 63, 97. Given that Dr. Gershwin submitted two reports and testified both days at the two-day entitlement hearing, I find the hours spent to be reasonable. Thus, Dr. Gershwin is compensated in full.

### iii. Miscellaneous Costs

In addition to the costs related to their experts, petitioners requested $5,459.01 to cover other miscellaneous expenses, including copies, postage, purchase of medical literature, their share of the transcript cost, and a technician to set up conference rooms for hearing. *See* Second Motion for Fees at 36, 44, 48, 50-53. A significant portion went toward equipping conference rooms for the virtual hearing, which was necessary in light of the pandemic. Additionally, these costs span over approximately five and a half years—since petitioners first filed a Motion for Fees in June of 2017. *See* ECF No. 42. Thus, I find these costs reasonable and award them in full.

## IV. Total Award Summary

Based on the foregoing, petitioners' Motion for Interim Attorneys' Fees and Costs is **GRANTED IN PART**. Accordingly, I award **$352,750.71,** representing **$149,769.90** in attorneys' fees and **$202,980.81** in attorneys' costs in the form of a check payable jointly to **petitioners Abigail and Daniel Sims and petitioners' counsel, Black McLaren, et al., P.C. The clerk shall enter judgment accordingly.**[13]

**IT IS SO ORDERED.**

**s/Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[12] Counsel is cautioned to monitor the hours spent by their experts, in particular Dr. Shuman, or risk greater reductions in the future.

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.